UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| Executive Air Taxi Corporation, a North Dakota Corporation,    ) ) ) | |
| Plaintiff,   ) ) | |
| v.   ) ) | Civil No. 1:04cv56 |
| City of Bismarck, et al.,   ) ) | |
| Defendants.   ) | |

**ORDER**

The flurry of filings has finally stopped and the court is in a position to address all of the pending discovery motions.  A lengthy hearing was held by telephone on February 7, 2006.  At that time the court noted that one motion was missing, although a response thereto had been filed.  The plaintiff Executive Air has now filed the moving papers.  In addition, the court requested supplemental briefing on the e-mail discovery issue in light of Executive Air's explanation of the scope of its pending motion.  Defendant City of Bismarck ("City")  responded to the supplementation on March 7, 2006;  presumably the motion is now ripe for decision.  That motion is the first of many this order will address.

1. <u>Motion for Sanctions by Executive Air</u>

Executive Air brought its motion to compel the requested e-mails in the form of a motion for sanctions (Doc. #146).  Executive Air moved for sanctions of either allowing an expert or someone associated with Executive Air access to the server used by the City to retrieve e-mails or an unfavorable jury instruction, arguing that the City has made no attempt to comply with this

1

court's September 14 order directing the City to "retrieve the archived e-mail communications, by whatever means necessary, and disclose the discoverable communications to Executive Air."

The City responded to the motion, stating it has attempted compliance and supplemented its response on November 1, 2005, The City advised Executive Air that archived e-mail communications by the City are only available on the state server for a maximum of 15 days from the date the request was made, and e-mail communications on the BTI third party server are only available for 90 days. The City further advised that the BTI server had not been utilized by the City within the last 90 days. The City advised that the described e-mail communications would be costly to obtain, but would request them if Executive Air agrees to pay. The City understood Executive Air did not wish to pursue those e-mails.

At the time of the hearing, the parties reiterated their positions and Executive Air confirmed that it is no longer pursuing the e-mails on the third party server exchange. However, Executive Air raised the issue of obtaining e-mails from the City's employees' individual hard drives and identified a service (Kroll Ontrack) that uses a special software retrieval program to access erased information. The City argued the issue of discovery from the hard drives and towers had not previously been raised but, in any event, it has provided hard copies of all discoverable e-mails. The City further argued that there would be substantial privileged and confidential information on the hard drives, making Executive Air's suggestion that a third party obtain the e-mails simply unworkable. Finally, the City asserts it would be a violation of federal law for a third party to examine the highly sensitive FAA materials, including do-not-fly lists, located on the City's computers.

Unfortunately, the supplemental briefing provided by the parties adds little to this discussion. Plaintiff argues first that the term "server" includes the personal computers and

therefore its earlier discovery request applies, and second its request for all e-mail communications necessarily included those on the individual work stations. The City disagrees that "server" means all computers, but reiterates its position that it has provided all available discoverable e-mails, from whatever source.

The court finds that Executive Air has requested all e-mail communications, either located on the third party servers or the individual work stations (towers, hard drives, laptops, etc.). Essentially, the question before the court is: what measures are reasonable to assure that all relevant e-mail communications have been produced?

Electronic discovery is a new and developing area of the law. A number of commentators and judges have written on the issue of retrieving information from a computer although it has been "deleted." A proposed amendment to the Federal Rules of Civil Procedure will address this issue by presumptively treating deleted information as "not reasonably available." Further efforts to access the information will be available only upon a good cause showing that the information is highly relevant and not available by other means. Further, the Sedona Conference on Electronic Discovery proposes that litigants are entitled to discovery in only one form. The court finds that both of these approaches are reasonable and adequately protect the interests of the parties.

In this case, the City has represented to the court that it has already produced all the non-privileged e-mail communications in hard copy. Thus, plaintiff already has its one form of discovery of these e-mail communications. It has not shown that further efforts will lead to discovery of other relevant communications, or that further information is unavailable through depositions or other means of discovery. Plaintiff simply assumes that because access to the information is technically possible, that access must be afforded. The court finds the requested

access must be reasonable as well as possible.  The access plaintiff seeks through the retrieval service provider is highly invasive and would expose confidential or privileged materials without adequate protection or a sufficient showing of need for the information.  Further, the effort simply is not warranted as a means to verify that the e-mail communications already produced by the City are complete.

Ordinarily the court would require the City to prepare a privilege log listing all of the e-mail communications relating to the subject matter of the request but withheld on privilege or work product grounds.  If the City possesses a hard copy of the withheld communications, the court directs that it produce a privilege log of those communications for production to plaintiff.  If the City has not retained a hard copy of the withheld communications, the court will excuse the requirement for a privilege log insofar as those communications have already been deleted.  The court is not excusing the preparation of a privilege log in any other circumstance; rather, the court simply finds that the burden of producing such a log for deleted electronic information is simply too great to justify the task in this situation.

The court **DENIES** plaintiff's motion to further compel e-mail communications that have been deleted from hard drives of City employees' computers, except to the extent that the City may be required to produce a privilege log of communications withheld from production, as described above.

      2.    <u>Protective Order</u>

On January 30, 2006 the court entered a Protective Order pursuant to the parties' stipulation.  In the transmittal letter to the court the parties advised that they disagree on one aspect of the protective order:  Whether an insurance company representative must sign the agreement to abide by the protective order.

The court agrees with the plaintiff that the insurance company representative may have a duty of confidentiality to its insured, but not to the plaintiff. Accordingly, the court orders that a supervisor for each insurance company involved must sign the agreement to abide by the protective order on behalf of the company and its employees, committing the employees and the company to the terms of the Protective Order.

3.      Motion for In- Camera Review to Determine Privilege

Executive Air seeks an in-camera review by the court of City documents claimed as privileged "to determine if a privilege exists and if so, if the information should be disclosed to plaintiff executive Air Taxi Corporation regardless of the privilege." (Doc. #145). Executive Air challenges the adequacy of the City's privilege log, and in particular those documents pertaining to Airport Corporation of America and its President, John P. Kennedy.

The court previously found that Mr. Kennedy is a hybrid witness in that he may be serving in an expert capacity, but previously served as a fact witness. Thus, the court held that some of the documents pertaining to Mr. Kennedy are subject to production and ordered the City to provide them, or provide a privilege log detailing the nature of the claimed privilege. The court cautioned the City to be careful not to overstate the extent of the privilege. Executive Air argues the City has done just that in its revised privilege log produced in February, 2006.

The court again declines the invitation to review in-camera presumably voluminous documents to determine the nature and extent of a possible privilege. During the hearing the court advised the City that its privilege log is deficient in many respects. But rather than have the City "go back to the drawing board," the court ordered counsel to confer by telephone and directed plaintiff's counsel to specify which documents are still at issue. The City was then directed either to provide the specified documents or supplement the privilege log in order to

5

satisfy plaintiff's concern.  If plaintiff is not satisfied a privilege exists after this process the parties may, as a last resort, ask the court to undertake an in-camera review of the specific documents in dispute.

In conjunction with the motion for in-camera review,  Executive Air requested an additional three (3) hours to depose Greg Haug.  The City agreed that if there are additional Kennedy documents produced  it will stipulate to the continued deposition of Greg Haug as to those documents.

    4.    <u>Letter Request and Scope of Discovery</u>

In a letter to the court dated January 30, 2006, the City requests enforcement of the court order compelling complete, unredacted tax returns and financial information.  Executive Air responded by letter stating the additional documents have been produced.  In addition, Executive Air sent the court a stack of documents it purports complies with the court's order.  At the time of the hearing counsel for the City acknowledged receiving some of the requested documents the week prior, but argued a considerable number of  unredacted documents have not yet been received.  Specifically, the City asserts Bates stamped documents numbered 001166 to 001172 still had not been received at the time of the hearing.  The City also contends it has not received the supporting schedules to Executive Air's consolidated tax returns.  Executive Air responded that it sent the requested documents, including the schedules, to a copy service for copying and delivery to the City.  Presumably the City now has the documents it seeks.  If not, Executive Air is ordered to produce them post-haste.

If some question remains as to what should be produced, counsel are directed to confer by telephone, not letters or e-mail, to work out the discrepancy.  If the answer is that all of the documents have been produced, there is little else the court can do.  However, if documents

subject to production are later discovered and supplementation is not made, the non-producing party will be subject to sanctions. This warning applied to **ALL** of the pending discovery requests/disputes.

     5.     <u>Scope of Discovery</u>

The parties continue to dispute the scope of permissible discovery. The court previously ordered that the tax returns and meeting minutes of TJ Holding Company and its affiliated companies are subject to production upon the entry of an appropriate confidentiality agreement. Plaintiff argues the personal financial information of Mr. Rohlf and "non-parties," presumably any entity other than Executive Air, are not encompassed in the court's order. The City asserts it is not seeking Mr. Rohlf's personal records, but to the extent they are intermingled the information is relevant to Executive Air's damage claims.

The court finds that Executive Air's interpretation of the scope of discoverable financial information is too narrow and does not permit defendants a reasonable opportunity to contest Executive Air's damage claim of over $20 million. Although the court agrees that the personal financial information of Mr. Rohlfs is not within the scope of discovery, to the extent that his finances are reflected in the working papers and schedules of any of the affiliates of TJ Holdings, that information is also discoverable. All of the financial information is subject to the terms of the confidentiality order.

     6.     <u>Tax Commissioner, Starion Financial, Cook Leasing and Greene, Holcomb and Fisher, LLC.</u>

The City has served subpoenas on the North Dakota Tax Commissioner, Starion Financial, and Greene, Holcomb, and Fisher, LLC. It is the court's understanding that with clarification of the scope of permissible discovery and the execution of an acceptable protective

order, these entities' compliance with the subpoenas is merely a matter of a court order permitting them to provide the requested documents.  Accordingly, the North Dakota Tax Commissioner, Starion Financial and Greene, Holcomb, and Fisher, LLC,  are directed to comply with the subpoenas served upon them to the extent they possess documents relating to TJ Holdings and its affiliates which are responsive to the properly served subpoenas.

       7.      <u>Executive Air Motion to Compel to Defendants Mark Fetch and Alan Sauter</u>

Plaintiff Executive Air asserts defendants Mark Fetch and Alan Sauter have failed to fully respond to its discovery requests or otherwise served evasive answers.  Plaintiff's second request seeks logbooks and pilot documents:

> 1.      All communications whether written or oral, emails, faxes, contracts, leases,..., and records of any kind related to your pilot logbooks and/or pilot information for services you provide or have provided, including dates thereof, on the Bismarck Municipal Airport or for any third party.

Defendants objected primarily on relevancy grounds, asserting that such information sheds no light on the plaintiff's property interest, and that the lack of a date restriction would require Mr. Sauter to search for and produce over 15 years of records.  Plaintiff argues "all information that sheds light as to the manner and method that defendants conduct business at the Bismarck Municipal Airport" is relevant, discoverable information.

The court finds that activity conducted on the Bismarck Municipal Airport by a competing entity may be relevant to Executive Air's claim that it was treated less favorably by the City than the competing entity.  Whether or not the logbooks and pilot records are sufficient evidence of disparate treatment is not a decision for this court at this time.  Rather, the scope of the discovery is the more pressing issue.  Plaintiff has asked for the world; the court finds

plaintiff has a legitimate interest in the pilot logs and pilot records only, limited to the past four (4) years.  Any disclosure is limited to <u>counsel and expert eyes only</u>.

Plaintiff also seeks to compel responses to its third request for production which seeks tax returns, invoices, receipts, and FAA correspondence from defendants Fetch and Sauter. Defendants state they never received the request.  The court advised the parties they must meet and confer **BEFORE** bringing a motion to compel.  Plaintiff's failure to satisfy this requirement results in a automatic denial of the motion.[1]  Executive Air's motion for costs is also denied.

        8.      <u>Executive Air Motion to Compel Production from Starion Financial</u>

Executive Air seeks production of documents in the possession of Starion Financial concerning Robert Simmers, Michael Aarstad, Simson Investment Company and Aircraft Management Services.[2]  Starion objected to the subpoena on the basis that production would be unduly burdensome, and further that it is prohibited by statute from disclosing the requested confidential information without the consent of the customer or pursuant to court order.  The individual defendants objected to the subpoena on relevancy grounds, and assert that to disclose this confidential information to Executive Air would "give plaintiff unwarranted proprietary

---

[1] During the telephone conference the court made a preliminary inquiry as to the asserted relevancy of the defendants' financial records.  Executive Air asserted that the defendants' revenue proves what Executive Air lost to the others' advantage.  The court suggested that just because someone made money does not indicate how much plaintiff lost.  This theme carried over into the discussion concerning the tax and financial records of defendants Aarstad, Aircraft Management Services and Mid- Dakota Clinic.  Executive Air's likelihood of success on the merits of the motion is small.

[2] The documents sought from Starion are essentially the same documents sought directly from the defendants in plaintiff's third request for production.  However, Executive Air broadens the discovery by seeking loan and credit applications and supporting documents, all financial statements and supporting schedules, all business or asset valuations and/or appraisals and supporting documents, all business projections or financial projections, all correspondence, and all other materials in Starion's possession related to the Simmers defendants.

information about the Simmers defendants related to their financial posture." <u>Response to Motion to Compel</u>, at 3.

Counsel for Executive Air asserts that defendants' financial information is necessary to establish what Executive Air lost by the City working in conjunction with these other entities to provide competitive services. In other words, Executive Air essentially claims that all of the business should have been Executive Air's, so presumably everything the defendants made comprises Executive Air's damages.

The court simply cannot accept plaintiff's relevancy argument and its theory of proving damages. Again, just because defendants' businesses made money by engaging in similar activities as Executive Air does not suggest those earnings would have accrued to Executive Air, but for the City's treatment of the various entities operating on the Municipal Airport. Even if plaintiff correctly presumes that all of the business at the Municipal Airport should have been Executive Air's but for the alleged disparate treatment, there are still too many variables in earning capacity to make defendants' earnings relevant to plaintiff's damage claim. Further, plaintiff's request fails to address defendants' confidentiality concerns and protection of defendants' proprietary interests. Plaintiffs' motion to compel production of information about defendants from Starion Financial is **DENIED.**

        9.      <u>Executive Air Motion to Compel Mid-Dakota Clinic</u>

Executive Air seeks to "gain access to information pertaining to the business relationship that Mid-Dakota had with the defendants in their capacity as airport employees." Mid- Dakota responded to the motion by stating that it is working with plaintiff's counsel in a good faith attempt to comply with the subpoena and "expects that by February 24, 2006 it will be able to provide plaintiff with copies of the requested documents or a description of the requested

documents it has in its possession.  At that time, Mid Dakota also will inform plaintiff as to what documents have been withheld and upon what basis."

Given the posture of this motion, the court is not in a position to determine what documents remain in dispute,[3] and the motion is therefore **DENIED.**

10.   Preservation Order

Executive Air brought a motion for preliminary injunction, seeking an order preserving the City of Bismarck's financial records until such time as it is determined what information is contained in those records.  The motion is **GRANTED** as a preservation order.  There shall be no routine destruction of City financial records during the pendency of this case.

### Conclusion

This order has addressed all of the discovery motions pending before the court (Doc. # 112, 113,115,117,118,124,132, 136, 145,146,153, 155,156,and 170).[4]  The clerk's office is directed to terminate the motions.

Dated this 10th day of April, 2006.

*/s/ Karen K. Klein*
Karen K. Klein
United States Magistrate Judge

---

[3]Executive Air has stated it is not seeking to obtain any medical records in the possession of Mid Dakota Clinic.  In the court's view this position is obvious, given the nature of the dispute, and suggested at the hearing that the parties contain their arguments "to something that makes sense."

[4]The motion to quash filed by Stutsman County State Bank (Doc. #136) has not been responded to but is resolved by this court's declaration on the proper scope of discovery and the order directing the financial institutions to produce the documents requested pertaining to TJ Holdings and its affiliates.

12